UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff/Respondent,<br><br>v.<br><br>JOHN RANKIN,<br><br>  Defendant/Petitioner. | Case No. 21-20629<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE UNDER 28 U.S.C. § 2255 [208]**

While on bond for federal drug conspiracy charges, John Rankin traveled to Arizona, without permission, and arranged a drug deal. Nearly nine kilograms of methamphetamine and one kilogram of fentanyl were shipped from Arizona to Detroit. Rankin arranged for two acquaintances to pick up the package and deliver it to him in Detroit so he could distribute the drugs. (ECF No. 120.) For this conduct, Rankin was separately indicted in this case for conspiracy to possess with intent to distribute a controlled substance and two counts of attempted possession with intent to distribute a controlled substance. (ECF No. 59.) All three counts carried a 10-year mandatory minimum sentence.

In time, Rankin pled guilty to these three counts. (ECF No. 120.) As part of his plea agreement, Rankin agreed to waive his right to appeal his conviction and any sentence less than the top of the guidelines range calculated by the Court. (*Id.* at PageID.590.) Rankin's sentencing was scheduled for May 30, 2023. (ECF No. 144.)

On that day, the Court received a letter from Rankin, dated May 21, 2023, requesting a new lawyer. (ECF No. 154.) The Court denied the request and sentenced Rankin below the guidelines range (of 235–290 months) to 180 months' imprisonment. (ECF No. 162.)

No direct appeal was filed within the 14-day limit. *See* Fed. R. App. P. 4(b)(1)(A)(i). Rankin says this was contrary to his instructions. He has filed a motion under 28 U.S.C. § 2255 seeking to vacate his conviction for his counsel's alleged ineffective assistance. (ECF No. 208.) Rankin claims his counsel was ineffective by failing to file a timely notice of appeal as directed, failing to withdraw from representing Rankin, and failing to obtain an expert to evaluate the weight and purity of the controlled substances at issue. (*Id.* at PageID.1523–1525.)

Following a limited evidentiary hearing and consideration of the briefs, the motion is DENIED.

I.

To prevail on a § 2255 motion, "[Rankin] must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea . . . ." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). This can include a Sixth Amendment ineffective-assistance-of-counsel claim. *See United States v. Caver*, 470 F.3d 220, 250 (6th Cir. 2006). To obtain relief, Rankin must show deficient performance on the part of his lawyer, and then show prejudice flowing from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish *Strickland* prejudice "in the context of guilty pleas,"

Rankin must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985).

In inquiring into any alleged deficient performance and prejudice, "no hearing is required if [Rankin's] allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). In other words, in a § 2255 proceeding, "[a]n evidentiary hearing is required unless the record conclusively shows that the [movant] is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 831 (6th Cir. 2018).

## II.

To prevail on a claim that counsel was ineffective for failing to file a direct appeal, a defendant must demonstrate that counsel either disregarded his specific instructions to file a notice of appeal or failed to consult with him about an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477–78 (2000). Prejudice is presumed when counsel disregards express instructions to file a notice of appeal even when, as here, the defendant's plea agreement contains an appeal waiver. *Garza v. Idaho*, 139 S. Ct. 738, 749–50 (2019); *see also Campbell v. United States*, 686 F.3d 353, 359 (6th Cir. 2012).

The Court could not determine from the briefing alone whether Rankin instructed his trial counsel to file a notice of appeal. In his motion, Rankin swore under penalty of perjury that he did and that counsel "promised he would do so."

3

(ECF No. 208, PageID.1522, 1531.) Rankin further surmised that counsel "abandoned Rankin's request to file an appeal notice" due to an alleged "financial conflict of interest." (*Id.* at PageID.1535.) The government's response brief did not directly address this issue, nor did it provide an affidavit or any other response from Rankin's trial counsel. Thus, the Court conducted an evidentiary hearing to further explore this issue. *See, e.g.*, *Jabir v. United States*, No. 22-4061, 2024 U.S. App. LEXIS 9328, at *4 (6th Cir. Apr. 17, 2024) ("Jabir certified under penalty of perjury that he told Duffrin to file a notice of appeal. Duffrin swore in an affidavit that Jabir never told him to file a notice of appeal. This conflicting evidence creates a dispute about a fact that is critical to resolving—and may be dispositive of—Jabir's ineffective-assistance claim.").

Following the hearing in which the Court heard testimony from Rankin and his trial counsel, Steven Scharg, the Court cannot find that Rankin directed Scharg to file a notice of appeal.

First, Rankin has provided conflicting explanations. Recall that in his written motion, Rankin argued that Scharg failed to file a notice of appeal despite promising to do so, presumably because he had some conflict of interest. (ECF No. 208, PageID.1522, 1535.) At the evidentiary hearing, however, Rankin testified that explanation was "a mistake." In his corrected version of events, Rankin said he had a conversation with Scharg in the courtroom immediately after the sentencing in which he told Scharg he wanted to file an appeal. Scharg allegedly responded that he does not do appeals and that Rankin would need to find a new lawyer. Rankin further

4

testified that he sent a follow-up email to Scharg either that day or the next day reiterating that he wanted to appeal his case. Scharg again responded, said Rankin, that he does not do appeals and Rankin would have to get another lawyer.

Unfortunately, Rankin does not have a copy of this email communication. Given the passage of time, the lawyers were also unable to retrieve any such communication from the detention facility where Rankin was housed at the time. Rankin attached to his motion some emails with Scharg about appealing the denial of his request for bond a few months prior to the sentencing. (*Id.* at PageID.1543–1544.) No explanation was provided, however, for why Rankin had those emails but not the one about a post-sentencing appeal.

Lastly, Scharg disputes Rankin's version of events. He testified that Rankin did not direct him to file an appeal. And Scharg's testimony that he would not refuse a client's request to file a notice of appeal is very plausible. Scharg has been practicing criminal law in federal court for about 35 years. In that time, he has filed notices of appeal and handled appeals. Scharg testified that had Rankin mentioned that he wanted to appeal, Scharg would have had no problem filing the "one piece of paper" notice of appeal. Indeed, he testified that "if [Rankin] asked me to file a notice of appeal, I would have done it immediately, because I know there's a number of required days that you have to file within." And, he said, he would always file the notice of appeal to avoid this very situation—being accused of ineffective assistance of counsel. For good measure, Scharg also checked his file and did not find any communication from Rankin about filing a direct appeal.

5

On this record, therefore, the Court does not find that Scharg disregarded or refused Rankin's specific directive to file a notice of appeal.

"In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . the question [is] . . . whether counsel in fact consulted with the defendant about an appeal." *Neill v. United States*, 937 F.3d 671, 676 (6th Cir. 2019) (alteration and omissions in original) (quoting *Flores-Ortega*, 528 U.S. at 478). Because Rankin's position is that he gave such an instruction, he did not also argue that Scharg was ineffective in failing to consult with him about an appeal. But because the Court finds inadequate support that Rankin indeed gave such an instruction, the parties strongly believe the Court must address the consultation issue. So it will.

In this context, "consult" means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [to] mak[e] a reasonable effort to discover the defendant's wishes." *Id.* (alterations in original) (quoting *Flores-Ortega*, 528 U.S. at 478). However, counsel only has a constitutional duty to consult when "a rational defendant would want to appeal" or when "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480; *Nix v. United States*, No. 20-6218, 2022 U.S. App. LEXIS 6676, at *3–4 (6th Cir. Mar. 15, 2022). Factors to consider in determining whether a rational defendant would want to appeal include whether (1) the conviction follows a trial or guilty plea, because a plea reduces the scope of potential appealable issues; (2) the defendant

6

received the sentence bargained for as part of a plea agreement; and (3) the plea waived some or all appeal rights. *Flores-Ortega*, 528 U.S. at 480.

Here, Rankin's conviction was the result of a guilty plea. His plea agreement contained an explicit appeal waiver. (ECF No. 120.) Rankin waived his right to appeal the conviction on any ground and waived his right to appeal the sentence if it did not exceed the top of the guidelines range calculated by the Court. (*Id.* at PageID.590.) Rankin's counsel explained the appeal waiver and it was further discussed at the change-in-plea proceeding. (ECF No. 218, PageID.1574, 1567.) Rankin indicated that he understood it. (*Id.* at PageID.1567.)

True, in explaining the appeal waiver, then-presiding District Judge George Caram Steeh asked Rankin: "You understand you give up the right to appeal your conviction based on this plea and the right to appeal your sentence as long as I sentence you generally in accord with the way your sentence has been estimated and recommended in the Rule 11 Agreement?" (*Id.*) Nothing in that statement was so inconsistent with or beyond the scope of the appeal waiver that it would have put Scharg on notice that Rankin might want to challenge the waiver and file an appeal. Indeed, at sentencing, this Court calculated Rankin's guidelines range at 235–295 months. Assuming the parties' understanding of Rankin's criminal history was accurate, that range was consistent with what the plea agreement contemplated. Then, following a substantial downward variance, Rankin was sentenced to 180 months. Under the totality of these circumstances, Scharg did not perform deficiently in failing to consult with Rankin about an appeal. *See, e.g.*, *Eisley v. United States*,

7

No. 20-1725, 2021 U.S. App. LEXIS 5341, at *3–4 (6th Cir. Feb. 23, 2021) ("[C]ounsel had no duty to consult with Eisley about an appeal because his guilty plea, below-Guidelines sentence, and appeal waiver indicated that a rational defendant would not have wanted to appeal."); *Phillips v. United States*, Nos. 22-1742/1743, 2023 U.S. App. LEXIS 13100, at *8 (6th Cir. May 25, 2023) ("The district court correctly determined that Phillips's guilty plea, below-guidelines sentence, and appeal waiver indicated that a rational defendant would not have wanted to appeal.").

Additionally, the fact that Rankin wanted to appeal the denial of his bond motion several months before sentencing did not create a duty to consult about a post-sentencing appeal once the appeal waiver kicked in. A little more than a week after his December 8, 2022, guilty plea, Rankin filed a motion to revoke his detention order because he needed a hip arthroplasty and was in significant pain. (ECF No. 123.) Rankin wanted "to have this surgery prior to serving any prison sentence." (*Id.* at PageID.631–632.) The motion was denied. (ECF Nos. 130, 133.) Scharg was aware that Rankin wanted to appeal that decision. But, testified Scharg, following the bond review hearing, Rankin did receive some treatment. And once Rankin was sentenced and awaiting designation to a BOP facility, there was no longer any basis for appealing a detention ruling.

In sum, the Court will not vacate Rankin's conviction or sentence based on his ineffective assistance of counsel claim premised on the alleged failure to file a notice of appeal.

8

### III.

The other issues raised in Rankin's § 2255 motion do not require a hearing. In addressing these issues, the Court considers that "a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)). Except for a claim of ineffective assistance of counsel, a defendant's failure to raise a claim on direct appeal results in a procedural default of that claim. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "A procedurally defaulted claim, absent a showing of cause and prejudice or actual innocence, cannot give rise to relief under § 2255." *Peveler*, 269 F.3d at 698.

### A.

The Court now turns to Rankin's claim that his trial counsel was ineffective for failing to file a motion to withdraw prior to sentencing as directed by Rankin. (ECF No. 208, PageID.1523.). A criminal defendant is entitled to the effective assistance of counsel at sentencing. *Goodwin v. Johnson*, 632 F.3d 301, 318 (6th Cir. 2011). But "to establish a breakdown of the attorney client relationship giving rise to ineffective assistance of counsel, a petitioner must do more than offer vague and conclusory allegations. Rather, a petitioner must offer some 'factual details to flesh out his claim that a breakdown of communication [lead] to ineffective assistance.'" *United States v. McCoy*, No. 15-20074, 2018 U.S. Dist. LEXIS 3561, at *4 (E.D. Mich. Jan. 9, 2018) (alteration in original) (citations omitted); *see also United States v. Atkin*, 80 F. Supp. 2d 779, 783 (N.D. Ohio 2000) ("To establish an ineffective

9

assistance of counsel claim based on a conflict of interest, a movant must demonstrate (1) the existence of an actual conflict of interest and (2) that the conflict adversely affected the movant's defense." (citing *Strickland*, 466 U.S. at 692)).

Rankin has failed to demonstrate a conflict or breakdown in the relationship. His petition simply states that "[c]ounsel rendered ineffective assistance of counsel due to a conflict of inter[e]st, finan[c]ial conflict, breakdown in communication." (ECF No. 208, PageID.1523.) His supporting brief provides no additional explanation or detail.[1] Nor does Rankin indicate why he would have insisted on proceeding to trial, rather than entering a guilty plea, if he had new counsel at sentencing. So this claim does not warrant relief.

Relatedly, Rankin also complains about this Court's denial of his motion for new counsel. According to Rankin, the Court "failed to conduct a full and detail[ed] colloquy relevant to Rankin's complete breakdown with Attorney Scharg, and develop a full record to appeal this Sixth Amendment violation." (*Id.* at PageID.1537–1538.)

Even assuming cause exists to excuse the procedural default of this claim, Rankin cannot show prejudice because the claim lacks merit. To prevail on such a claim, Rankin would have to establish a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999)

---

[1] In his motion, Rankin references "Appendix[e]s[] A and B" as potential sources of support. (ECF No. 208, PageID.1535.) But the Court did not receive an Appendix A, and Appendix B has nothing to do with a conflict, financial or otherwise.

10

(internal quotation marks omitted) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). He cannot do so.

The record demonstrates that the Court thoroughly and adequately evaluated the relevant factors in assessing Rankin's request for the withdrawal of his counsel. "Once a defendant expresses his dissatisfaction with counsel, the district court is obliged to conduct an inquiry into the defendant's complaint to determine whether there is good cause for substitution of counsel." *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009). After this inquiry, the Court considers the timeliness of the motion, the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and the balancing of these factors with the public's interest in the prompt and efficient administration of justice. *See, e.g.*, *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

Immediately prior to the sentencing, the Court heard from Rankin regarding his dissatisfaction with his retained counsel. His primary complaint was that he did not have a chance to review all of the discovery prior to his guilty plea and was no longer comfortable with his counsel due to some "inconsistencies" with his case and not feeling that his lawyer was "putting a full effort toward his case." (ECF No. 173, PageID.1128–1131.) After hearing from defense counsel as well as the government, the Court specifically addressed this issue. It explained:

> The essence of the problem here relates to the discovery and Mr. Rankin's upset that he did not receive the discovery. It appears that Mr. Scharg sent the discovery. For some reason, at Mr. Rankin's prior facility, he did not receive the discovery. As soon as that came to the

11

> attention of Mr. Scharg, he resent the discovery. Mr. Scharg indicates to me this was never brought to his attention before Mr. Rankin entered his plea. He didn't raise this with [then-presiding] Judge Steeh before he entered his plea. He didn't raise any issues with Mr. Scharg's representation of him at the time that he entered his plea. That issue with the discovery, and Mr. Rankin's upset with that discovery, has already occurred and whether that might result in some type of 2255 motion or a grievance, I don't know, but I don't see it being an impediment to Mr. Scharg being able to adequately represent Mr. Rankin and Mr. Rankin's interest in the sentencing.

(*Id.* at PageID.1142.)

Nor was the Court given any satisfactory reason that counsel could not adequately represent Rankin's interests at sentencing. Rankin pled guilty on December 8, 2022, and did not seek new counsel until May 21, 2023, which was only nine days before the sentencing. This would have necessitated another continuance in the sentencing. Thus, the Court found the request was not timely and, in a case that had already been pending for a year and a half, another continuance would not promote the prompt and efficient administration of justice. (*Id.* at PageID.1141, 1443); *see also United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009)) ("[W]hen the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." (alteration in original)). The Court was also not convinced there had been a complete breakdown in the communication between Rankin and his lawyer. (ECF No. 173, PageID.1141, 1143.)

It was only after evaluating all of these factors that the Court denied Rankin's motion for new counsel. Rankin has shown no error in this ruling or prejudice resulting from it.

Lastly, Rankin contends that he was not advised about his right to represent himself to cure the breakdown with his counsel. (ECF No. 208, PageID.1538.) This is true. And for a simple reason: Rankin never asked to represent himself. During the hearing on Rankin's request for new counsel, the Court asked Rankin if he could afford to retain a new lawyer. Rankin responded that he was not sure and would have to ask his mother. (ECF No. 173, PageID.1124.) As a follow-up, the Court asked, "if you're not able to afford counsel, would you be looking to have the Court appoint a lawyer for you." (*Id.*) Rankin said, "yes, please." (*Id.*) During the hearing, Rankin made clear he was seeking a new lawyer and not to represent himself. (*See, e.g., id.* at PageID.1132.)

Thus, Rankin's challenge to his inability to obtain new counsel does not warrant relief under § 2255.

## B.

Next, the Court addresses Rankin's claim that his counsel was ineffective for failing to retain an expert.

Rankin received a letter from his counsel on October 4, 2022, advising, "I have the lab report now and it is accurate. The drugs were 100% pure. Let me know how you want to proceed." (ECF No. 208, PageID.1542.) Two months later, Rankin pled guilty and agreed that the drugs seized included 8.8 kilograms of methamphetamine and 1 kilogram of fentanyl. (ECF No. 120, PageID.583.) Now, Rankin asserts that his counsel "rendered ineffective assistance by failing to obtain an expert relevant to the weight and purity of the controlled substance." (ECF No. 208, PageID.1525.) Rankin's

13

argument appears to be that he would not have been subject to a mandatory minimum sentence based on the quantity of the controlled substances had his lawyer conducted a more thorough investigation and obtained expert testing of the weight and purity of the drugs to challenge the government's testing. (*Id.* at PageID.1539.)

"In any ineffectiveness [of counsel] case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." *Strickland*, 466 U.S. at 691. A habeas petitioner must provide some evidence showing a decision not to investigate was unreasonable, but "speculative assertions that" the lawyer should have conducted a certain kind of investigation "do not constitute such evidence" and cannot by themselves justify relief under § 2255. *United States v. Valencia*, 188 F. App'x 395, 400–01 (6th Cir. 2006).

Rankin has offered no additional evidence to establish that the government testing of the methamphetamine and fentanyl was somehow deficient or that testing by a defense expert would have led to different results. Merely speculating that it could have been different is not enough. *See id.* (rejecting claim of ineffective assistance of counsel where counsel failed to have seized bags of methamphetamine independently tested and reasoning that defendant's speculative assertions that the drugs may have been amphetamine and the bags may have been from different sources were not evidence that counsel's decision was unreasonable); *see also United States v. Smith*, Nos. 20-00668, 20-00707, 2023 U.S. Dist. LEXIS 192045, at *2 (N.D. Ohio Oct. 26, 2023) (finding no ineffective assistance of counsel where petitioner had not "explained how the outcome of his case would have been different if his counsel

14

had used an independent expert to test the drugs in evidence"); *Jones v. United States*, Nos. 12-140, 15-08, 2018 U.S. Dist. LEXIS 33148, at *16–17 (E.D. Tenn. Mar. 1, 2018) ("Petitioner has offered no basis on which to conclude his counsel's failure to obtain an expert to challenge the lab results was in any way unreasonable. As in *Valencia*, Petitioner has done nothing more than assert that his trial counsel should have had the seized drugs independently tested—presumably for weight and purity." (citation omitted)).

Thus, Rankin is not entitled to relief on his claim that counsel was ineffective in failing to obtain independent testing of the controlled substances.

## IV.

For these reasons, the Court will not grant a delayed appeal based on Rankin's claim that his lawyer was ineffective for not seeking such an appeal. Nor is relief warranted on Rankin's claims that his counsel was ineffective for failing to withdraw or for failing to obtain an expert to test the drugs, nor on his claim that this Court abused its discretion in not granting his request for new counsel. Thus, Rankin's motion to vacate under § 2255 (ECF No. 208) is DENIED.

Given the uncertainty as to Rankin's claim that he directed his counsel to file a notice of appeal, the Court will grant a certificate of appealability on that issue. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

SO ORDERED.

Dated: February 24, 2025

                                                s/Laurie J. Michelson

                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE